**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **TYRONE REMBERT** | ) | **CASE NO.** |
| **11716 Imperial Ave** | ) | |
| **Cleveland, Ohio 44120** | ) | **JUDGE** |
| | ) | |
| **PLAINTIFF** | ) | **COMPLAINT FOR:** |
| **VS.** | ) | |
| | ) | **1.  WRONGFUL TERMINATION OR** |
| **SWAGELOK COMPANY** | ) | **FAILURE TO HIRE (RACE** |
| **6050 Cochran Road** | ) | **DISCRIMINATION);** |
| **Solon, Ohio 44139** | ) | |
| | ) | **2.  WRONGFUL TERMINATION OR** |
| **DEFENDANT** | ) | **FAILURE TO HIRE (RETALIATION);** |
| | ) | |
| | ) | **3. HOSTILE WORK ENVIRONMENT** |
| | ) | **(RACE OR  RETALIATION)** |
| | ) | |
| | ) | |
| | ) | **(DEMAND FOR JURY TRIAL** |
| | ) | **ENDORSED HEREON)** |
| | ) | |

## INTRODUCTION

1.  This action is brought by Plaintiff Tyrone Rembert  ("Plaintiff") pursuant to, *inter alia*, Title

VII of the Civil Rights Act of 1964, as amended ("Title VII"); 42 U.S.C. § 1981 and Ohio

Rev. Code Chapter 4112 for wrongful termination or failure to hire and hostile work

environment on account of race discrimination or retaliation for complaining about and/or

opposing race discrimination/harassment.

## JURISDICTION AND VENUE

2.  This Court has jurisdiction of these claims pursuant to  28 U.S.C. § 1331 because the action

arises under the laws of the United States and involves federal questions based on Title VII and Section 1981. This Court also has pendent jurisdiction of state law claims pursuant to 28 U.S.C § 1367.

3.    Venue lies in this Northern District of Ohio, Eastern Division, because Defendant is doing business in, Plaintiff resides in and Plaintiff was wrongfully terminated or Defendant failed to hire Plaintiff and subjected him to a hostile work environment and the claims alleged herein arose in  this District.

4.    All jurisdictional and administrative prerequisites have been met,  to wit: Plaintiff  timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about November 6, 2017. A true and accurate copy  of this charge is attached hereto as Exhibit "A" .

5.    On November 30, 2018, the EEOC issued a Determination in Plaintiff's favor, a true and accurate copy of which is attached hereto as Exhibit "B". This Determination states, in pertinent part:

> Charging Party alleged he was discriminated against because of his race, Black, and in retaliation for engaging in protected activity, in that he was subjected to harassment and had his offer of permanent employment rescinded, in violation of Title VII.
>
> The investigation revealed that Respondent discriminated against Charging Party and a class of Black individuals because of their race, Black, in that they were subjected to a racially offensive work environment and harassment, including, but not limited to, inappropriate and offensive race-based comments, pictures, graffiti, remarks and/or jokes because of their race, Black, since at least January 1, 2015 to the present. The evidence also revealed that supervisors and managers knew or should have known of the racially offensive work environment and racial harassment, but failed to address it in a swift, appropriate, and effective manner.

2

> Therefore, I find there is reasonable cause to believe that Charging Party and a class of Black individuals were discriminated against, in violation of Title VII.

6.   The  EEOC issued and sent Plaintiff a Notice of Right to Sue dated April 30, 2019, a  true and accurate copy of which is attached hereto as Exhibit "C". The Notice states, in pertinent part: "...The EEOC found reasonable cause to believe that violations of the statute(s) occurred with respect to some or all of the matters alleged in the charge..."  This Complaint is being filed within 90 days of Plaintiff's receipt of the same--the envelope containing this Notice of Right to Sue was postmarked on May 2, 2019--and Plaintiff has satisfied the jurisdictional requirements.

## PARTIES

7.   Plaintiff  is an individual who resides in Cleveland, Ohio and  is Black/African-American (collectively "Black").

8.   Defendant Swagelok Company ("Defendant") is an Ohio corporation engaged in the business of designing, manufacturing and delivering fluid system products.

## BACKGROUND

9.   Plaintiff  began his employment  with Defendant initially as a "temporary employee" from Legacy Staffing on or about January 30, 2017, most recently working in the tool crib and as a grinder.

10.  Defendant was an employer of Plaintiff, including pursuant to the EEOC *Enforcement Guidance: Application of EEO laws to Contingent Workers Placed by Temporary Employment Agencies and Other Staffing Firms* because it, *inter alia*, exercised significant supervisory control over Plaintiff and/or Defendant was a  joint employer of Plaintiff along

3

with Legacy Staffing.

11. Defendant also, *inter alia*, promulgated work rules and conditions of employment, work assignments and issued operating instructions.

12. Since February, 2017, Plaintiff was continuously harassed and subjected to derogatory racial statements and threats by coworkers and  management. Non- exclusive examples follow.

13. Starting on or about February 20, 2017, caucasian employee  Bob  Lane and employee Bill Lewis continuously sarcastically asked Plaintiff "are you having fun yet."

14. Francis, (last name unknown ["LNU"]), a caucasian supervisor, told Plaintiff during or around March 2017  "I see you have your Black Face on".

15. Doug, LNU, another caucasian supervisor said about Plaintiff in front of Plaintiff during or around March 2017 "if he tries anything,  it's enough of us here to take him down."

16. At or around the same time and again during or around April 2017, Mr. Lane and Mr.  Lewis sarcastically asked Plaintiff again "are you having fun yet".

17. Since April, 2017, almost on a daily basis, Plaintiff was told by employees Mr. Lane and Mr. Lewis "you better pray".

18. On or about May 22, 2017, Plaintiff complained about and/or opposed racial discrimination, harassment and derogatory comments made against him to his supervisor, Brett Kaiser,  but Mr. Kaiser did not do anything in response or take any action.

19. Since May, 2017, Mr. Kaiser continually told Plaintiff "no one should have to work under these conditions."

20. During or around June 2017, other employees said about Plaintiff in front of him "look at him, who does he think he is?".

21. During June 2017, almost on a daily basis, Plaintiff was told by employees Mr. Lane and Mr. Lewis "you better pray".

22. At or around the same time, Mr. Lane and Mr. Lewis sarcastically asked Plaintiff again "are you having fun yet".

23. On or around July 27, 2017, Caucasian employee John, LNU, told Plaintiff "we all have ugly faces and we're all in this together".

24. During July, 2017, almost on a daily basis, Plaintiff was told by employees Mr. Lane and Mr. Lewis "you better pray".

25. At or around the same time, Mr. Lane and Mr. Lewis sarcastically asked Plaintiff again "are you having fun yet".

26. On or around August 9, 2017, Caucasian Tim, LNU, held a hose pipe up like a noose near his face and told Plaintiff "This is what we do here".

27. At least one other prior incident occurred where Black employees saw a noose tied, knotted and sitting on a Black employee's work bench.

28. This prior noose incident was reported, but Defendant failed to exercise reasonable care to prevent a re-occurrence.

29. Other employees used the "N" word.

30. Supervisor Kaiser since around August 2017 repeatedly told Plaintiff "Tyrone, you shouldn't have to work under these conditions", but again did nothing to stop the racial harassment.

31. At or around the same time, Mr. Lane and Mr. Lewis sarcastically asked Plaintiff again "are you having fun yet".

32. During September, 2017, Mr. Kaiser told Plaintiff "I don't know how you can work under

5

these circumstances".

33. During September, 2017, Plaintiff complained about and/or opposed the noose incident and other derogatory comments, including the ugly faces comment, to Mr. Kaiser, who again told Plaintiff "no one should have to work under these circumstances", but did nothing to correct the situation.

34. During September, 2017, Mr. Kaiser told Plaintiff "I don't know how you can work under these circumstances".

35. During September, 2017 Mr. Kaiser asked Plaintiff "Tyrone, you have gaps in years on your resume–how did you make a living during those times?"

36. On or around September 12, 2017, caucasian Greg, LNU, said about Plaintiff while near Plaintiff: "this nigger keeps coming in here looking like a pimp everyday".

37. During September, 2017, Plaintiff signed and accepted Defendant's written offer of permanent employment contingent on, *inter alia*, satisfactory completion of a drug screen and background check,  but was told he would work by himself.

38. On September 26, 2017, Plaintiff received an email from Defendant stating, *inter alia*, "We have received your signed offer letter. Thank you and congratulations again. We look forward to your joining Swagelok".

39. However, Mr. Kaiser held Plaintiff back from reporting by instructing Plaintiff to train his replacement.

40. During or around September, 2017, Plaintiff's supervisor told other employees that Plaintiff has another job in another building, which escalated the harassment, including other employees continuing to ask Plaintiff when he was leaving.

41. At or around the same time, Mr. Lane and Mr. Lewis sarcastically asked Plaintiff again "are you having fun yet".

42. On October 11, 2017, Plaintiff's new supervisor in the permanent position was notified by Defendant that Plaintiff's "background came back and we can set a start date" and Plaintiff's background information was "green lighted" so he could start as a permanent employee.

43. Thereafter on the same day, Mr. Kaiser assured Plaintiff he passed his background check and said "Tyrone, I know you probably haven't been resting good, you can rest now because you're in".

44. On or about October 12, 2017, Mr. Kaiser told Plaintiff "we'll call Mr. Montogmery, he wants to talk to you", which call never happened.

45. On or about the same day, Caucasian Chester, LNU, told Plaintiff "Tyrone, remember I didn't do anything to you."

46. On or about October 19, 2017, Mr. Kaiser told Plaintiff "if I were in your shoes I would leave now because no one should have to work under these conditions. "

47. Plaintiff replied "No, I'll finish out the night".

48. Mr. Kaiser responded "No, you need to leave now", which surprised Plaintiff given that he was told his background check cleared for his position as a permanent employee.

49. Unbeknownst at the time to Plaintiff, Defendant on October 19, 2017 terminated Plaintiff and/or failed to hire Plaintiff and/or rescinded its offer of permanent employment to Plaintiff.

50. Defendant claims the reason for this adverse employment action(s) was a consumer report showing a plea of guilty to a fourth degree misdemeanor.

7

51. This fourth degree misdemeanor that Plaintiff pled guilty to was for a threat of force or physical harm to a household member occurring more than seven months earlier on  March 10, 2017.

52. While one of the purposes of the Fair Credit Reporting Act is to provide requisite fair notice to an employee *before* an adverse employment action is taken against the employee based on a background report so that the employee, even assuming the report is accurate, has the opportunity to first explain to the employer a negative background issue, such as why true but negative information is irrelevant to the employee's fitness for the job;  respond to the employer's concerns; and discuss the issues raised in the report before the adverse action occurs in order to give the employee the opportunity to prevent any anticipated or possible adverse action, Defendant thwarted and essentially deprived Plaintiff's requisite opportunity in this regard by previously assuring him he passed his background check for permanent employment *and* not personally meeting with and explaining to him at any point prior to the adverse action that, contrary to its prior assertion,  it was subsequently claiming it would terminate or not hire him or would rescind the offer of permanent employment based on his fourth degree misdemeanor.

53. Indeed, the first time Plaintiff became aware of the reason Defendant claims it terminated or failed to hire or rescinded its offer of permanent employment was after Plaintiff filed his EEOC charge.

54. Regardless, a fourth degree  misdemeanor in Ohio is the second-lowest level of crime that can be charged.

55. The guilty plea was for Ohio Rev. Code §2919.25(C), which, *inter alia*, prohibits a threat of

force of physical harm to a household member not a spouse.

56.  According to a joint publication of the EEOC and Federal Trade Commission entitled

"*Background Checks: What employers need to know*":

> "...employers should not use a policy or practice that excludes people
> with certain criminal records if the policy or practice significantly
> disadvantages individuals of a particular race...and does not
> accurately predict who will be responsible, reliable, or safe employee.
> In legal terms, the policy or practice has a "disparate impact" and is
> not "job related and consistent with business necessity."

57.  A five-year University of Texas-Houston School of Public Health study found that black and

Hispanic couples are two to three times more likely to report male-to-female intimate partner

violence than white couples.

58.  Other research shows Blacks are more likely to experience domestic violence then whites.

59.  Moreover, the plea of guilty to essentially a threat of force or physical harm to a household

member does not accurately predict who will be a responsible, reliable, or safe employee.

60.  Indeed, prior to his termination and/or the offer rescission and/or failure to hire, Plaintiff

established a good work record and did not have any disciplines or write-ups and was not

involved in any issues regarding physical violence.

61.  Thus, terminating or not hiring or rescinding the offer of permanent employment based on

a guilty plea to a threat of force or physical harm to a household member seven months

earlier results in a "disparate impact" that adversely affects Black employees and was not

"job related and consistent with business necessity."

62.  Indeed, after Plaintiff earlier volunteered to his supervisor the foregoing domestic issue when

he was applying for a permanent job with Defendant, his supervisor told him  not to worry,

that it was not anything to be concerned about.

63.    Regardless, Plaintiff has been advised that at least one other employee was able to work for Defendant despite multiple domestic violence convictions.

64.    Moreover, upon information and belief, based on information from the EEOC, other employee(s) were able to work for Defendant despite a felony conviction(s), including at least one Caucasian employee.

65.    At the time of his termination, failure to be hired or Defendant's recision of its permanent employment offer on October 19, 2017 , Plaintiff was only told "no one should have to work under these conditions. Leave now and you will be paid for your full shift."

66.    The next day, Plaintiff was told not to report to Defendant.

67.    Plaintiff did not know of any specific claimed reason at that time for the foregoing.

68.    Upon information and belief, other employees, including Caucasian employee(s), with felony or domestic violence conviction(s), were hired and/or allowed to remain employed and/or were allowed temporary employment by Defendant.

69.    Moreover, Defendant was aware of other racial comments made, and claims to have a zero tolerance policy for it,  but Defendant did not immediately terminate one or more persons uttering said comments.

70.    While Defendant claims it terminated Plaintiff and/or rescinded the offer of  permanent employment and/or failed to hire Plaintiff due to Plaintiff's fourth degree misdemeanor involving a "threat" despite already assuring him he passed the background check; Defendant allowed employees who used the "N" word or racial words to first explain and discuss their behavior and at least another opportunity to correct their behavior without being terminated.

10

71.     Plaintiff believes he was subject to a hostile work environment and terminated/not hired by

        Defendant due to his race, Black, or in retaliation for complaining about and opposing race

        discrimination/harassment, in violation of, *inter alia*, Title VII and 42 U.S.C. § 1981

### GENERAL ALLEGATIONS APPLICABLE TO EACH COUNT

72.     The actions and inactions complained of by Plaintiff in this Complaint against Defendant

        were willful and wanton, voluntary, intentional, continuing and done continuously,

        knowingly and with discriminatory and retaliatory animus and were engaged in by Defendant

        with knowledge of and in continuous violation of the below laws,  knowledge that its

        conduct was prohibited by the below laws and in knowing or reckless disregard or

        indifference of the same and whether its conduct violated the below laws.

73.     For each of Defendant's actions and inactions as set forth in this Complaint, Defendant

        directly and by and through its  agents, employees and representatives, directly and/or

        vicariously engaged in  a policy, pattern and practice and  continuously engaged in the

        described acts and inactions with malice, intent, ill will, recklessness, gross negligence and

        a willful and conscious disregard of Plaintiff's  rights that had a great probability of causing

        and did cause Plaintiff substantial  harm and a  conscious or reckless indifference or

        disregard to Plaintiff's state and  federally  protected right to work without unlawful

        discrimination, retaliation or harassment.

74.     Defendant is liable on the basis of  its own actions and inactions and on the basis of *inter*

        *alia*, *respondeat superior* and strict liability. Defendant, through its supervisory and other

        employees,  who  acted at all material times set forth herein within the scope of their

        employment with Defendant and in furtherance of its business,  knew and should have

known of the above and below unlawful conduct and failed to take all necessary preventive steps and immediate and appropriate corrective and/or remedial action, which can be construed as condoning and ratifying the unlawful actions and inactions.

75. Regardless, Defendant is responsible for its actions and inactions and the actions and inactions of its employees, agents and supervisory employees regardless of whether the specific actions and inactions complained of were authorized or even forbidden by Defendant and regardless of whether Defendant knew or should have known of their occurrence.

76. For each of Defendant's actions and inactions as set forth in this Complaint, Plaintiff was treated differently from and less favorably than similarly-situated and comparable employees who were Caucasian or not Black or who had not complained of and/or opposed race discrimination and harassment.

### COUNT I

(Title VII–Race Discrimination-Wrongful Termination/Failure to Hire )

77. Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

78. Defendant is an "employer" as defined under Title VII as it engages in an industry affecting commerce and has fifteen or more employees for each working day in each of twenty (20) or more calendar weeks in the current and preceding year.

79. Plaintiff was an employee of Defendant within the meaning of Title VII.

80. Plaintiff is a member of a protected class, Black.

81. At the time of Defendant's decision to terminate Plaintiff, not hire him and/or rescind its offer of permanent employment, Plaintiff was fully qualified for his position(s).

82.   Plaintiff was treated differently and more adverse than non-Black employees and applicants.

83.   Defendant did not have a  legitimate, nondiscriminatory reason for its actions.

84.   Defendant's claimed reasons for the adverse employment actions against Plaintiff were pretext for discrimination and (1) had no basis in fact; (2) did not actually motivate the decision to terminate Plaintiff, not hire him and/or rescind its offer of permanent employment; and/or  (3) were  insufficient to warrant the decision to terminate Plaintiff, not hire him and/or rescind its offer of permanent employment.

85.   Defendant's claimed reason(s)  for the adverse employment actions against Plaintiff were pretext for discrimination.

86.   In actuality, Plaintiff's race, Black, was the reason for  Defendant's decision to terminate Plaintiff, not hire him and/or rescind its offer of permanent employment.

87.    Defendant's termination of Plaintiff and/or failing to hire him and/or rescinding its offer to him of permanent employment, as set forth herein because of his race, Black, violates Title VII.

88.   As a direct and proximate result of Defendant's willful, unlawful and discriminatory employment policies and practices as set forth above,  in willful violation of Title VII, Plaintiff was  caused to and did suffer the damages more fully specified below but which include, *inter alia*, lost income and wages, lost benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, consequential damages,  liquidated damages, interest,  punitive damages, costs and  reasonable attorneys' fees.

## COUNT II

(Ohio Rev. Code Chapter 4112-Race Discrimination-Wrongful Termination/ Failure to Hire)

89.     Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

90.     Defendant's termination of Plaintiff and/or failing to hire him and/or rescinding its offer to him of permanent employment, as set forth above and below because of his race, Black, violates Ohio Rev. Code Chapter 4112, including, but not limited to, §§ 4112.02 and 4112.99.

91.     As a direct and proximate result of Defendant's willful, unlawful and discriminatory employment policies and practices as set forth above, in willful violation of Ohio Rev. Code Chapter 4112, including, but not limited to, §§ 4112.02 and 4112.99, Plaintiff was  caused to and did suffer the damages more fully specified below but which include, *inter alia*, lost income and wages, lost benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, consequential damages, liquidated damages, interest, punitive damages, costs and  reasonable attorneys' fees.

## COUNT III

(42 U.S.C. § 1981)

92.     Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

93.     Section 1981 prohibits, *inter alia*, racial discrimination in the "making, performance,

14

modification, and termination of contracts."

94. Plaintiff's intentional unlawful termination and/or Defendant's failure to hire Plaintiff and/or recision of its offer to Plaintiff of permanent employment because of his race, Black, violates, *inter alia*, 42 U.S.C. § 1981.

95. As a direct and proximate result of Defendant's intentional, willful, unlawful and discriminatory employment policies and practices as set forth above, in willful violation of, *inter alia*, 42 U.S.C. § 1981, Plaintiff was caused to and did suffer the damages more fully specified below but which include, *inter alia*, lost income and wages, lost benefits, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, consequential damages, liquidated damages, interest, punitive damages, costs and reasonable attorneys' fees.

## COUNT IV

(Title VII –Retaliation-Wrongful Termination/Failure to Hire)

96. Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

97. This Claim for retaliation is being brought in the alternative to the other non-retaliation Claims set forth in this Complaint.

98. Plaintiff engaged in activities protected by Title VII.

99. These protected activities included complaining about and opposing race discrimination/harassment.

100.    The exercise of these protected activities were known to Defendant.

101.    Following some or all of the above protected activities, Defendant took  employment actions materially adverse to Plaintiff, including by terminating him and/or failing to hire him and/or rescinding its offer to him of permanent employment, as set forth herein, in   retaliation for engaging in the foregoing protected activities, in  knowing and willful violation  of, *inter alia*, Title VII.

102.    Plaintiff's protected activity or activities and Defendant's retaliation for Plaintiff engaging in  protected activity or activities was the but-for cause of the above and below adverse actions by Defendant.

103.    There was  a causal connection between the above protected activities and the above materially adverse employment actions.

104.    A reasonable employee would have found the foregoing challenged conduct materially adverse and said conduct would have dissuaded a reasonable worker from engaging in the above protected activities.

105.    Plaintiff was treated differently from and less favorably than similarly-situated and comparable employees who did not take part in the above lawful activities.

106.    Defendant knowingly and willfully retaliated  against the Plaintiff  in willful violation of Title VII and  Defendant  acted with retaliatory animus.

107.    As a direct and proximate result of Defendant's above and below willful and unlawful retaliatory practices , Plaintiff was caused to and did suffer damages  the damages more fully specified above and below, but which include, but are not limited to,  lost income and wages,

including past, back and future salary, damages for lost pension benefits, retirement benefits, insurance and other fringe benefits, loss of reputation, humiliation, emotional distress, embarrassment and loss of self esteem, adverse health effects, liquidated damages, punitive damages, interest, costs and reasonable attorneys' fees.

108.   As a direct and proximate result of Defendant's continuing willful and unlawful retaliatory practices, Plaintiff is entitled to all remedies available under Title VII.

## COUNT V

(Ohio Rev. Code Chapter 4112, Including §§ 4112.02 [I] and 4112.99–Retaliation-Wrongful Termination/Failure to Hire)

109.   Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

110.   This Claim for retaliation is being brought in the alternative to the other non-retaliation Claims set forth in this Complaint.

111.   In the alternative to the non-retaliation claims, Defendant's, *inter alia*, terminating Plaintiff and/or failing to hire him and/or rescinding its offer to him of permanent employment, as set forth herein were in retaliation for engaging in the above protected activities, including complaining about and opposing race discrimination/harassment, in knowing and willful violation of, *inter alia*, Ohio Revised Code Chapter 4112, including §§ 4112.02 (I) and 4112.99.

112.   As a direct and proximate result of Defendant's above and below willful and unlawful retaliatory practices , Plaintiff was caused to and did suffer damages , including the damages

17

more fully specified above and below, but which include, but are not limited to,  lost income and wages, including past, back  and future salary, damages for lost pension benefits, retirement benefits, insurance and other fringe benefits, loss of reputation, humiliation, emotional distress, embarrassment and loss of self esteem, adverse health effects,  liquidated damages, punitive damages, interest,  costs and  reasonable attorneys' fees.

113.    As a direct and proximate result of Defendant's above and below willful and unlawful retaliatory practices ,  Plaintiff  is entitled to all remedies  available under  Ohio Revised Code Chapter 4112, including §§ 4112.02 (I) and 4112.99.

## COUNT VI

### (42 U.S.C. § 1981-Retaliation)

114.    Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

115.    This Claim for retaliation is being brought in the alternative to the other non-retaliation Claims set forth in this Complaint.

116.    Defendant took  employment actions materially  adverse to Plaintiff, including by terminating him and/or failing to hire him and/or rescinding its offer to him of permanent employment, as set forth above and below, in   retaliation for  engaging in the foregoing protected  activities,  including  complaining  about  and  opposing  race discrimination/harassment, in intentional, knowing and willful violation  of, *inter alia*, 42 U.S.C. § 1981.

117.    As a direct and proximate result of Defendant's above and below intentional, willful and

18

unlawful retaliatory practices,  Plaintiff  is entitled to all remedies available under 42 U.S.C. § 1981, including as set forth above and below.

## COUNT VII

(Title VII –Hostile Work Environment/Race or Retaliation)

118.   Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

119.   Including as set forth above, Plaintiff is a member of a protected class and was subjected to unwelcome harassment as a result of Defendant creating an objectively intimidating, hostile and offensive work environment  due to his race, Black,  or in retaliation for complaining about and opposing race   discrimination/harassment that unreasonably interfered with Plaintiff's work performance.

120.   Plaintiff complained about and opposed racial harassment to his supervisor and Defendant.

121.   Moreover, some of the  racially hostile work environment incidents set forth herein occurred in the presence of one or more supervisors and/or other management level employee(s); and/or one or more supervisor(s) and/or other management level employee(s) participated in them; and/or frequent, obvious, severe and pervasive harassment gave rise to a presumption that Defendant  knew or should have known of it.

122.   Regardless, Defendant failed to exercise reasonable care to prevent the racial harassment and its response to racial harassment manifested an indifference or unreasonableness in light of the facts the employer knew or should have known.

123.   Defendant knowingly and willfully violated Title VII, as amended, for creating and

19

maintaining this hostile work environment.

124.    As a direct and proximate result of Defendant's above and below willful and unlawful  and
continuous practices , Plaintiff was caused to and did suffer damages   the damages more
fully specified above and below, but which include, but are not limited to,  lost income and
wages, including past, back  and future salary, damages for lost pension benefits, retirement
benefits, insurance and other fringe benefits, loss of reputation, humiliation, emotional
distress, embarrassment and loss of self esteem, adverse health effects,  liquidated damages,
punitive damages, interest,  costs and  reasonable attorneys' fees.

125.    As a direct and proximate result of Defendant's willful and unlawful hostile work
environment,  Plaintiff  is entitled to all remedies available under Title VII.

## COUNT VIII

(Ohio Rev. Code Chapter 4112, Including     §4112.99–Hostile  Work
Environment/Race or Retaliation)

126.    Plaintiff incorporates herein by reference each of the preceding allegations as if fully
rewritten herein.

127.    Defendant's causing and maintaining the above hostile work environment due to Plaintiff's
race, Black,  or  in  retaliation  for  complaining  about  and  opposing  race
discrimination/harassment, were in continuous, knowing and willful violation of, *inter alia*,
Ohio Revised Code Chapter 4112, including §4112.99.

128.    As a direct and proximate result, Plaintiff was caused to and did suffer damages , including
the damages more fully specified above and below, but which include, but are not limited to,

20

lost income and wages, including past, back  and future salary, damages for lost pension benefits, retirement benefits, insurance and other fringe benefits, loss of reputation, humiliation, emotional distress, embarrassment and loss of self esteem, adverse health effects,  liquidated damages, punitive damages, interest,  costs and  reasonable attorneys' fees.

129. As a direct and proximate result of Defendant's above willful and unlawful hostile work environment ,  Plaintiff  is entitled to all remedies  available under  Ohio Revised Code Chapter 4112, including §4112.99.

## COUNT IX

(42 U.S.C. § 1981- Hostile Work Environment/Race or Retaliation)

130. Plaintiff incorporates herein by reference each of the preceding allegations as if fully rewritten herein.

131. Defendant's causing and maintaining the above hostile work environment due to Plaintiff's race, Black, or in retaliation for complaining about and opposing race discrimination/harassment was  in knowing, intentional and willful violation  of, *inter alia*, 42 U.S.C. § 1981.

132. As a direct and proximate result of Defendant's above willful, intentional and unlawful practices,  Plaintiff  is entitled to all remedies available under 42 U.S.C. § 1981, including as set forth above and below.

## DEMAND FOR JUDGMENT

**WHEREFORE**, Plaintiff prays and demands judgment for Plaintiff in an amount to be proven at

trial, but in excess of any and all jurisdictional minimums, as follows against Defendant for each of the above  Counts:

(a)     All remedies and damages available under Title VII, including, but not limited to, past and future economic and non-economic damages,  back pay, promotion,    front pay, restitution, lost benefits, prejudgment and postjudgment interest, punitive and liquidated damages, emotional distress damages, pain and suffering damages, loss of enjoyment of life and self-esteem damages, "Black mark" and loss of reputation damages, attorney fees, expert witness fees and costs in an amount to be determined at trial;

(b)     All remedies and damages available under 42 U.S.C. § 1981, including, but not limited to, past and future economic and non-economic damages,  back pay, promotion,    front pay, restitution, lost benefits, prejudgment and postjudgment interest, punitive and liquidated damages, emotional distress damages, pain and suffering damages, loss of enjoyment of life and self-esteem damages, "Black mark" and loss of reputation damages, attorney fees, expert witness fees and costs in an amount to be determined at trial;

(c)     All remedies available under Ohio law for   race discrimination and retaliation, including Ohio Revised Code Chapter 4112, *et seq*.,  including, but not limited to, past and future economic and non-economic damages, back pay, promotion,  front pay, restitution, lost benefits, prejudgment and postjudgment interest, punitive and liquidated damages, emotional distress damages, pain and suffering damages, loss of enjoyment of life and self-

22

esteem damages, "Black mark" and loss of reputation damages, attorney fees, expert witness fees and costs in an amount to be determined at trial;

(d)     All remedies available under Ohio law to Plaintiff  for hostile work environment, including Ohio Revised Code Chapter 4112, *et seq*., including, but not limited to, past and future economic and non-economic damages, back pay, promotion,  front pay, restitution, lost benefits, prejudgment and postjudgment interest, punitive and liquidated damages, emotional distress damages, pain and suffering damages, loss of enjoyment of life and self-esteem damages, "Black mark" and loss of reputation damages, attorney fees, expert witness fees and costs in an amount to be determined at trial;

(e)      Exemplary and punitive damages in an amount to be proven at trial but in an amount of at least five percent (5%) of  Defendant's annual gross income and/or net worth for each year beginning with the wrongful actions set forth in the  Complaint or at the time of trial, or such higher amount as is set forth by evidence at trial and/or that a jury may award;

(f)     A  mandatory injunction and order directing Defendant to place Plaintiff in the position(s) he would have been in on the same terms and conditions as all other  similarly  situated  employees  he  would  have  occupied  but  for Defendant's discriminatory or retaliatory  treatment  and  making him whole for all earnings he would have received but for Defendant's discriminatory or retaliatory treatment, including, but not limited to, providing full seniority, wages and back pay plus interest thereon, and pension rights, insurance and

23

other lost benefits;

(g)     All consequential damages and other available compensatory damages not

specified herein; and

(h)     Such other and further legal and equitable relief as may be just and proper.

     **/s/ Dale A. Bernard**

**DALE A. BERNARD (0020001) of**

**THE BERNARD LAW FIRM**

**Crown Centre**

**5005 Rockside Road, Suite 600**

**Cleveland, Ohio 44131-6808**

**Phone:  (440) 546-7500**

**Fax: (440) 546-7501**

**E-mail:    dbernard@bernardlaw.com**

**ATTORNEY FOR PLAINTIFF**

## JURY DEMAND

A trial by jury is hereby demanded of the maximum number allowed by law.

  /s/ Dale A. Bernard

Dale A. Bernard (0020001)

Attorney for Plaintiff

C:\Users\berna\Documents\renbert\complaintfinalfinalfinal.wpd