# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| TYRONE REMBERT, | ) | Case No. 1:19-cv-01716 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | |
| | ) | |
| SWAGELOK COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Justice Scalia famously joked that federal judges should have a stamp that says, "stupid but constitutional."  This quip speaks to the limited role of the federal courts and serves as a reminder that judges do not give effect to their preferred outcomes when deciding cases or use the Constitution as a vessel for their personal views of the law, policy preferences, or political priors.  "It might be fair to ask whether [a party's] decision was a wise or kind one.  But it's not our job to answer questions like that.  Our only task is to decide whether the decision was an illegal one." *TransAm Trucking, Inc. v. Administrative Review Bd., U.S. Dep't of Labor*, 833 F.3d 1206, 1215 (10th Cir. 2016) (Gorsuch, J., dissenting).

In this case, Defendant Swagelok Company has a policy against hiring applicants with recent convictions for crimes of violence.  Plaintiff Tyrone Rembert worked on temporary assignment for Swagelok.  While employed in a temporary capacity, Plaintiff experienced racial harassment and repeatedly complained about it to his supervisor.  Notwithstanding these circumstances, Mr. Rembert was by all

accounts a capable and qualified worker. When he applied for permanent employment, Swagelok extended him an offer, subject to passing a background check. After learning of a recent misdemeanor conviction for domestic violence disclosed in the background check, Swagelok rescinded its offer of permanent employment and terminated Mr. Rembert's temporary assignment.

On these facts, Plaintiff complains that Defendant engaged in race discrimination and retaliation in violation of federal and State law. He also asserts claims for a racially hostile work environment. Because the record leaves no doubt that Swagelok acted pursuant to its policy, the Court **GRANTS** Defendant's motion for summary judgment. As applied to Mr. Rembert, that policy makes no sense. Swagelok lost a good worker in an economy where they are hard to find. That policy, and Swagelok's hiring decision in this case, might be stupid (to use Justice Scalia's word), unwise, even irrational—but it was not illegal.

## STATEMENT OF FACTS

Plaintiff's claims arise from his temporary assignment with Swagelok and from Swagelok's rescission of its offer for permanent employment and termination of Mr. Rembert's temporary assignment. In the current procedural posture of the case, the Court construes the record in the light most favorable to Plaintiff, which establishes the following facts.

### A.    Mr. Rembert's Temporary Assignment with Swagelok

In January 2017, Mr. Rembert's employer, Legacy Staffing, assigned Mr. Rembert as a temporary worker to Swagelok. (ECF No. 1, ¶ 9, PageID #3; ECF No. 5, ¶ 9, PageID #37; ECF No. 49-1, PageID #609.) While working at Swagelok,

Mr. Rembert testified that he was continuously harassed and subjected to derogatory racial statements by coworkers and supervisors.  (ECF No. 49-1, PageID #616.) According to Mr. Rembert's testimony, he experienced the following instances harassment:

- Mr. Rembert heard and was called the N-word numerous times, including by two supervisors and a coworker.  (*Id.*, PageID #614.)

- The coworker said, "Look at this n***** coming in here.  Come in here like a pimp every day.  Dressed like a pimp every day."  (*Id.*, PageID #615 & #618.)

- Another coworker held up a hose pipe like a noose, saying, "This is what we do here."  (*Id.*, PageID #614 & #622.)

- The two supervisors repeated the phrase, "Who that N think he is?"— directed at Mr. Rembert—at least 45 to 50 times.  (*Id.*, PageID #615 & #622.)

- One supervisor said to Mr. Rembert, "I see you have your Black face on," in front of two coworkers.  (*Id.*, PageID #618.)

- On one occasion, the same supervisor excluded Mr. Rembert from a "shop talk," saying "No temps allowed in here," even though he allowed three to five Caucasian temporary workers to attend.  (*Id.*, PageID #619.)

- On one occasion, the other supervisor gathered with three to four other coworkers and said, as Mr. Rembert walked by, "If something goes down, he tries something, we can take him."  (*Id.*, PageID #614 & #620.)

3

- Three coworkers continuously and on a daily basis told Mr. Rembert in a threatening manner, "We all got ugly faces and we in it together," "Are you having fun yet," and "You better pray." (*Id.*, PageID #612, #617–18 & #622.)

- Another coworker made a hand gesture of pointing and firing a gun at Mr. Rembert. (*Id.*, PageID #617.)

Further, Mr. Rembert swears in an affidavit that the individuals who harassed him were white and that he did not witness them harassing Caucasian workers in the same way. (ECF No. 61-1, PageID #2607.) Mr. Rembert testified that he complained about the harassment to his supervisor at Swagelok, Brett Kaiser, between fourteen and seventeen times. (ECF No. 49-1, PageID #641–42.) Kaiser repeatedly told Mr. Rembert, "No one should have to work under these conditions." (*Id.*, PageID #621.) For his part, Kaiser denied receiving harassment complaints from Mr. Rembert and testified that he made his statement about working conditions involving Mr. Rembert's workload. (ECF No. 49-6, PageID #1039–40.) But in the current procedural posture, the Court credits Mr. Rembert's version of the facts. Kaiser did not contact human resources or investigate complaints of harassment relating to Mr. Rembert. (ECF No. 49-1, PageID #621; ECF No. 49-6, PageID #1030 & #1045.)

### B.    Mr. Rembert's Application for Permanent Employment

In August 2017, Mr. Rembert applied for a permanent employment position at Swagelok. (ECF No. 49-1, PageID #623.) Around the time of this application, Mr. Rembert raised concerns about his criminal history with his supervisor, Kaiser.

4

(*Id.*, PageID #615–16.)   Mr. Rembert testified that he told Kaiser that he had "a domestic violence" in his background and that Kaiser responded by saying, "Oh that's nothing" and by waiving his hand to brush it off.  (*Id.*, PageID #615.)  Kaiser testified that Mr. Rembert informed him of a 12-year-old criminal conviction but did not inform him of any more recent convictions.  (ECF No. 49-6, PageID #1024–25.)  Further, Kaiser testified that, after discussing the matter with human resources, he told Mr. Rembert that such a distant conviction was not a concern.  (*Id.*)

Mr. Rembert interviewed with Josh Montgomery, the hiring manager for the permanent position.   (ECF No. 49-1, PageID #623.)   During the interview, Montgomery explained that every candidate must pass a drug screen and complete a background check.  (ECF No. 49-5, PageID #964.)  Montgomery asked Mr. Rembert if there was anything in his background that would disqualify him from the job.  (*Id.*, PageID #964–65.)  In response, according to Montgomery's testimony, Mr. Rembert told him that he was "in an institution . . . 12 years prior."  (*Id.*, PageID #964.)  According to Montgomery, the interview went well and he believed Mr. Rembert was qualified for the position.  (ECF No. 49-5, PageID #964–65.)  But Mr. Rembert did not tell Montgomery about a recent domestic violence conviction (ECF No. 49-1, PageID #624), which involved an incident on March 10, 2017 and resulted in a conviction for a fourth-degree misdemeanor (a low-level offense) in municipal court on August 3, 2017 (ECF No. 51-9, PageID #1622).

### C.    Disposition of Mr. Rembert's Application

On September 21, 2017, Swagelok extended a permanent employment offer to Mr. Rembert, contingent on satisfactory completion of a drug screen and background check.  (ECF No. 49-5, PageID #964–66; ECF No. 50-4, PageID #1345.)

### C.1.    Swagelok's Hiring Practices

As a general practice, Swagelok reviews each candidate's background check and makes employment decisions on a case-by-case basis.  (ECF No. 49-4, PageID #869; ECF No. 49-7, PageID #1113–14 & #1124–25.)  Typically, Swagelok rescinds offers if the background check reveals convictions of violence or theft within the last five years.  (ECF No. 49-7, PageID #1131–32.)  Before making an adverse employment decision based on the background check, Swagelok sends a pre-adverse letter alerting the candidate to the criminal conviction revealed on the background check and advises him to dispute any discrepancy within seven days.  (*Id.*, PageID #1135.)  If the candidate does not challenge the background report within seven days, Swagelok rescinds the offer.  (*Id.*, PageID #1146–47.)  If the candidate is also a temporary employee, Swagelok both rescinds the employment offer and terminates the temporary position.  (*Id.*)

### C.2.    Swagelok's Review of Mr. Rembert's Background Check

Human resources director John Kocsis reviewed Mr. Rembert's background check.  (ECF No. 49-2, PageID #674–75; ECF No. 49-4, PageID #837 & #845.)  During this review, Kocsis reviewed only Mr. Rembert's background check from HireRight, Swagelok's vendor for background reports.  (ECF No. 49-2, PageID #680 & #717; ECF

6

No. 49-4, PageID #853.)  Mr. Rembert's background check revealed an August 3, 2017 conviction for domestic violence.  (ECF No. 51-9, PageID #1622.)  Kocsis testified that he consulted with legal counsel before deciding the disposition of Mr. Rembert's application, but ultimately made the final decision to rescind the offer himself.  (ECF No. 49-4, PageID #883 & #887–88.)

On October 12, 2017 at 9:19 am, Swagelok emailed the pre-adverse action letter to Mr. Rembert.  (ECF No. 50-1, PageID #1264.)  Swagelok also sent the letter by mail.  (*Id*., PageID #1266.)  Mr. Rembert did not contest the background check findings within the seven-day period.  Accordingly, on October 19, 2017, Swagelok rescinded Mr. Rembert's employment offer.  (*Id*., PageID #1270–72.)  Also on that day, Swagelok contacted Legacy Staffing to end Mr. Rembert's temporary assignment.  (ECF No. 49-3, PageID #795.)

### C.3.    Communications About Mr. Rembert's Application

Around the time that Swagelok sent Mr. Rembert the pre-adverse action letter, Swagelok employees exchanged several emails and phone calls about Mr. Rembert's employment application.  On October 11, 2017, the day before Swagelok sent the pre-adverse action letter, Nichelle Guerrero, a human resources administrator, checked a shared new hire spreadsheet.  (ECF No. 49-3, PageID #785.)  On the spreadsheet, an unknown individual had typed "yes" in the column displaying whether Mr. Rembert passed his background check.  (*Id*.)  In response to this information, Guerrero called Kaiser, Mr. Rembert's current supervisor in his temporary role, and left a voicemail message stating that Mr. Rembert passed his background check and

that they needed to discuss his start date.  (*Id.*, PageID #787–88.)  Guerrero also called Montgomery, Mr. Rembert's future supervisor, to say that Mr. Rembert's background check cleared.  (ECF No. 49-5, PageID #969–70.)  That same day, at 4:45 pm, Montgomery emailed Kaiser to share that Mr. Rembert had passed the background check and to discuss Mr. Rembert's start date.  (ECF No. 50-6, PageID #1385.)

Later, on either October 11 or October 12, Guerrero looked again at the spreadsheet and noticed that "yes" was no longer typed in the column displaying whether Mr. Rembert had passed his background check.  (ECF No. 49-3, PageID #790.)  Additionally, a contractor with Swagelok emailed Guerrero on October 12, 2017 at 9:08 a.m. to inform her that legal counsel advised Swagelok to rescind Mr. Rembert's offer due to his background check.  (ECF No. 55-1, PageID #1682 & #1697; ECF No. 60-6, PageID #2587.)  That same morning, at 9:37 a.m., Guerrero emailed Kaiser to say there was a "mix-up in the system" and to share that Mr. Rembert's "information is still processing."  (ECF No. 50-6, PageID #1386.)  Also, she left Kaiser a voicemail message stating that they were not moving forward with setting Mr. Rembert's start date yet.  (ECF No. 49-3, PageID #790.)

### C.4.  Mr. Rembert's Perspective

On the evening of October 11, 2017, Kaiser informed Mr. Rembert that his background check had cleared and that he could begin the on-boarding process for permanent employment.  (ECF No. 49-6, PageID #1051; ECF No. 50-6, PageID #1386.)  Mr. Rembert testified that after other employees learned that Mr. Rembert

had been hired in a permanent position, he experienced escalated racial harassment. (ECF No. 49-1, PageID #628.)  In response to the escalated harassment, Mr. Rembert increased his complaints to Kaiser.  (*Id*.)

Mr. Rembert did not learn that there was an issue with his background check until after Swagelok terminated his temporary employment.  (ECF No. 49-1, PageID #628.)  He did not receive the pre-adverse action letter by email or in the mail.  (ECF No. 49-1, PageID #628.)  On October 19, 2017, the day on which Swagelok rescinded the employment offer, Kaiser instructed Mr. Rembert to leave work before he finished his shift, without explanation.  (ECF No. 49-1, PageID #630.)  The next morning, Legacy Staffing contacted Mr. Rembert to tell him that Swagelok had terminated his temporary assignment.  (*Id*., PageID #632.)

## D.    The EEOC Action

Proceeding *pro se*, Mr. Rembert filed a charge of discrimination with the Equal Employment Opportunity Commission on November 6, 2017.  (ECF No. 1-1, PageID #25; ECF No. 61-1, PageID #2609.)  On the charge of discrimination form, Mr. Rembert checked the boxes indicating that he had experienced discrimination based on race and retaliation.  (*Id*.)  Describing the discrimination, Mr. Rembert wrote, in full:

> I started working for Swagelok as a temporary employee on January 30, 2017; most recently as a Tool Crib/Grinder.
>
> Since February 2017, I have been subjected to derogatory racial comments by coworkers as well as management.  On May 22, 2017 Supervisor Brent [sic] Kaiser was made aware of the harassment and derogatory remarks, but did nothing.  On August 9, 2017, a coworker held a hose pipe up like a noose around his neck and said this is what

9

we do here.  In September 2017, Mr. Kaiser was made aware of the noose and other derogatory comments.  Also in September I signed a salary agreement which stated that I would be hired permanently as a full-time employee.  On October 19, 2017, I was discharged.

I believe that I have been discriminated against due to my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended and retaliated against for participating in a protected activity.

(*Id.*)

On November 30, 2018, the EEOC issued a determination in Mr. Rembert's favor, finding that there was reasonable cause to believe that Swagelok discriminated and retaliated against Mr. Rembert in violation of Title VII.  (ECF No. 1-2, PageID #27; ECF No. 61-1, PageID #2610.)  In its determination, the EEOC found that "[t]he investigation revealed that [Swagelok] discriminated against [Mr. Rembert] and a class of Black individuals because of their race, Black, in that they were subjected to a racially offensive work environment and harassment."  (*Id.*)  "The evidence also revealed that supervisors and managers knew or should have known of the racially offensive work environment and racial harassment, but failed to address it in a swift, appropriate, and effective manner."  (*Id.*)

After conciliation failed, the EEOC issued a right-to-sue letter dated April 30, 2019.  (ECF No. 1-3, PageID #28; ECF No. 61-1, PageID #2612.)  This lawsuit followed.

## STATEMENT OF THE CASE

In his complaint, Plaintiff asserts claims for race discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*., its cognate provision of State law, Chapter 4112 of the Ohio

10

Revised Code, and 42 U.S.C. § 1981.  (ECF No. 1, ¶ 77–132, PageID #12–21.)
Defendant moves for partial judgment on the pleadings on Plaintiff's claim of race
discrimination in violation of Title VII (Count I) arguing failure to exhaust.  (ECF
No. 48.)  The day after moving for partial judgment on the pleadings, Defendant filed
a motion for summary judgment on all of Plaintiff's claims.  (ECF No. 51.)  Plaintiff
opposes (ECF No. 65) and moves to strike certain evidence on which Defendant relies
(ECF No. 71).  Additionally, Defendant moves to strike certain evidence on which
Plaintiff relies in his opposition.  (ECF No. 67; ECF No. 68.)  The Court held oral
arguments on the parties' motions on May 18, 2022.

## JUDGMENT ON THE PLEADINGS

Rule 12(c) provides that, once "the pleadings are closed" a party may "move for
judgment on the pleadings." Fed. R. Civ. P. 12(c).  "A motion for judgment on the
pleadings . . . generally follows the same rules as a motion to dismiss the complaint
under Rule 12(b)(6)." *Bates v. Green Farms Condo. Assoc.*, 958 F.3d 470, 480 (6th Cir.
2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).

Therefore, on a motion under Rule 12(c), courts "must follow the Supreme
Court's changes to the pleading standards in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009),
and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)." *Bates*, 958 F.3d at 480 (citing
*Engler v. Arnold*, 862 F.3d 571, 575 (6th Cir. 2017)).  While "the court's decision rests
primarily upon the allegations of the complaint[,]" "exhibits attached to the complaint
may also be taken into account." *JTO, Inc. v. Travelers Indem. Co. of Am.*, 242 F.
Supp. 3d 599, 602 (N.D. Ohio 2017) (cleaned up).  Only "well-pleaded factual
allegations" that "plausibly give rise to an entitlement of relief" and "allow the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged" will survive.  *Bates*, 958 F.3d at 480 (quotation and citation omitted). Conversely, "[m]ere labels and conclusions are not enough[.]"  *Engler*, 862 F.3d at 575.  Nor are facts that are "merely consistent with" liability.  *Bates*, 958 F.3d at 480 (quotation omitted).

In its motion for partial judgment on the pleadings, Defendant contends that Plaintiff's claim for failure to hire or for wrongful termination based on race is barred because Plaintiff failed to exhaust his administrative remedies for this claim.  (ECF No. 48, PageID #591.)  Defendant argues that Plaintiff did not include this claim in his charge with the Equal Employment Opportunity Commission.  (*Id.*)  Rather, in Defendant's view, Plaintiff's charge reflects only allegations of hostile work environment and retaliation and, therefore, these are the only causes of action which the EEOC right-to-sue letter authorized Plaintiff to pursue.  (*Id.*, PageID #589.)

An employee alleging employment discrimination in violation of Title VII must first file an administrative charge with the EEOC.  *See* 42 U.S.C. § 2000e–5(e)(1).  A Title VII plaintiff cannot bring claims in a lawsuit that he did not include in his EEOC charge.  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).  However, when an aggrieved employee files an EEOC charge *pro se*, courts construe the complaint liberally and may consider claims that are "reasonably related to or grow out of the factual allegations in the EEOC charge."  *Id.* at 362.  If the facts alleged in the charge of discrimination would prompt the EEOC "to investigate a different,

12

uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Weigel v. Baptist Hosp. of East Tenn.*, 302 F.3d 367, 379 (6th Cir. 2002).

In his charge to the EEOC, attached to his complaint, Mr. Rembert indicated through a checkbox and through his narrative description that he believed he had been discriminated against because of his race.  (ECF No. 1-1, PageID #25.)  In his narrative, Mr. Rembert further explained that he signed an agreement for permanent employment but was discharged a month later.  (*Id.*)  These factual allegations are reasonably related to a claim for failure to hire or for wrongful termination based on race.  At the least, they are sufficient to put the EEOC on notice that a race discrimination claim might arise out of Swagelok's failure to hire Mr. Rembert as a permanent employee and Swagelok's discharge of Mr. Rembert.  Therefore, the race discrimination claim is within the scope of Plaintiff's EEOC charge.

Defendant's authorities do not compel a different conclusion.  Defendant cites two cases in which courts held that harassment claims were outside the scope of EEOC charges that contained only allegations of disparate treatment.  *See Weldon v. Warren Cnty. Child. Servs.*, No. 1:12-cv-279-HJW, 2012 U.S. Dist. LEXIS 162615, at *16 (S.D. Ohio Nov. 14, 2012); *Berryman v. Supervalu Holdings, Inc.*, No. 3:05cv169, 2008 U.S. Dist. LEXIS 24034, at *9 (S.D. Ohio Mar. 13, 2008).  Defendant contends that the opposite is true as well, such that a disparate treatment claim is outside the scope of a charge that alleges harassment.  (ECF No. 48, PageID #594.)  However, in the cited cases, the charges lacked factual allegations supporting harassment claims. In contrast, the charge here contains facts relating to the disparate treatment claim—

that Mr. Rembert was denied permanent employment and discharged after experiencing racial harassment and complaining of it to his supervisor.  Liberally construing Plaintiff's *pro se* charge, as it must, the Court concludes that it contained sufficient factual allegations to prompt the EEOC to investigate disparate treatment relating to failure to hire or wrongful termination.  In this context, the EEOC's determination, which referenced discrimination against "a class of Black individuals because of their race, Black, in that they were subjected to a racially offensive work environment and harassment" in addition to Mr. Rembert, does not preclude Plaintiff's claims for failure to hire or for wrongful termination.  (ECF No. 1-2, PageID #27; ECF No. 61-1, PageID #2610.)

For these reasons, Plaintiff exhausted his administrative remedies with respect to the race discrimination claim and is not precluded from bringing it. Accordingly, the Court **DENIES** Defendant's motion for partial judgment on the pleadings.  (ECF No. 48.)

## OBJECTIONS TO EVIDENCE

On summary judgment, the central inquiry "determin[es] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Generally, a district court "will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter."  *Kermavner v. Wyla, Inc.*, 250 F. Supp. 3d 325, 329 (N.D. Ohio 2017) (citing *Anderson*, 477 U.S. at 249).  A district court only examines "disputes over facts that might affect the outcome of the

14

suit under governing law." *Anderson*, 477 U.S. at 248.  "It is well settled that only admissible evidence may be considered by the trial court ruling on a motion for summary judgment." *Wiley v. United States*, 20 F.3d 222, 225–26 (6th Cir. 1994).

Before reaching the substantive arguments raised in Defendant's motion for summary judgment, the Court addresses the parties' motions to strike evidence.  *See Brainard v. American Skandia Life Assur. Corp.*, 432 F.3d 655, 667 (6th Cir. 2005) ("Generally, a district court should dispose of motions that affect the record on summary judgment before ruling on the parties' summary judgment motions."). Defendant moves to strike the following evidence, which Plaintiff submitted in opposition to Defendant's motion for summary judgment:  (1) Lexis reports and their accompanying affidavit, and (2) the EEOC determination.  (ECF No. 67; ECF No. 68.) Plaintiff moves to strike the affidavit of Brian Moran which Defendant attached to its reply brief.  (ECF No. 71.)

As a threshold matter, the Court notes that a "motion to strike" applies only to pleadings.  *See* Fed. R. Civ. P. 12(f).  It is not the proper vehicle for attacking exhibits filed in support of, or in opposition to, motions for summary judgment.  *Goodwin v. American Marine Express, Inc.*, No. 1:18-CV-01014, 2021 WL 848948, at *8 (N.D. Ohio Mar. 5, 2021); *see also Andrews v. Lecats Ventriloscope LLC*, No. 5:19-CV-01792, 2022 WL 704578, at *3 (N.D. Ohio Mar. 9, 2022).  Instead, in this context, motions to strike should be construed as objections under Rule 56(c)(2).  *Andrews*, 2022 WL 704578, at *3; *see also* Fed. R. Civ. P. 56(c) advisory committee's note to 2010

15

amendment.  Accordingly, the Court construes the parties' motions to strike as objections under Rule 56(c)(2).

### A.    The Lexis Reports

Defendant moves to strike the affidavit of Kathleen Dugan and the attached exhibits that Plaintiff filed in support of his opposition to Defendant's motion for summary judgment.  (ECF No. 67.)  Plaintiff filed the affidavit of Dugan, the Librarian and Chief Administrator of the Cuyahoga County Law Library Resources Board.  (ECF No. 57, ¶ 1, PageID #1867.)  In the affidavit, Dugan explains that she obtained Lexis Smartlinx reports from the Lexis Public Records Database and provided them to Plaintiff's counsel.  (*Id.*, ¶ 4, PageID #1868.)  The Lexis reports purportedly show the criminal history of Caucasian individuals whom Defendant either hired or retained despite recent convictions for crimes of violence.  (ECF No. 64, PageID #2662; ECF No. 65, PageID #2704.)  Defendant contends that the Lexis reports constitute inadmissible hearsay because the affiant did not attest that she had personal knowledge as to the reports' content or that she had personal knowledge of how the reports are assembled and maintained.  (ECF No. 67, PageID #2736.)

In response, Plaintiff contends that the Lexis reports are admissible for several reasons.  First, Plaintiff argues that the reports are not hearsay because he is offering them for a reason other than showing the truth of the matter asserted.  (ECF No. 73, PageID #2809.)  Specifically, Plaintiff argues that he is offering the reports to show Defendant's knowledge of the comparator individuals' convictions on the theory that the background checks Defendant received from HireRight would have reported the

16

same convictions reported in the Lexis reports.  (*Id.*, PageID #2810.)  However, the Lexis reports have no bearing on what is reported to Defendant by its third-party vendor HireRight and create no inferences about Defendant's knowledge.

Next, Plaintiff argues that, even if the reports are hearsay, they are admissible pursuant to the business records exception contained in Rule 803(6).  (*Id.*, PageID #2807.)  However, the Rule requires the "testimony of the custodian or another qualified witness" to establish that it applies.  Fed. R. Evid. 803(6)(D).  Dugan is not a custodian of Lexis records.  While Plaintiff states that he could present a qualifying witness from Lexis to testify, he has not identified that witness.  (ECF No. 73, PageID #2807.)  Nor is it clear that a witness from Lexis could show the reports are business records, since the reports are a product generated by Lexis, not a record "kept in the course of a regularly conducted activity" of Lexis.  *See* Fed. R. Evid. 83(6)(B).

Further, Plaintiff argues that, even if the reports are hearsay and do not fall within an exception, they are admissible at the summary judgment stage because their content is admissible.  (ECF No. 73, PageID #2807.)  That is, "[t]he proffered evidence need not be in admissible *form,* but its *content* must be admissible."  *Bailey v. Floyd Cnty. Bd. of Educ. By & Through Towler*, 106 F.3d 135, 145 (6th Cir. 1997).  Plaintiff argues that he could introduce certified copies of the public records of the convictions or introduce the testimony of the individuals themselves.  (ECF No. 73, PageID #2807.)  But Plaintiff has not presented that evidence here.  In any event, this evidence would prove the fact of the individuals' convictions.  Whether it would

also corroborate the content of the Lexis reports depends on the accuracy of those reports.

Defendant points out that the Lexis reports contain a disclaimer as to their potential unreliability and that Plaintiff did not independently verify the data contained in the reports.  (ECF No. 67, PageID #2737.)  Plaintiff responds that the HireRight background reports contain similar disclaimers about their unreliability, making the Lexis reports as equally reliable as the HireRight reports.  (ECF No. 73, PageID #2808–09.)  Moreover, Plaintiff argues that other evidence in the record corroborates the Lexis reports.  (*Id.*, PageID #2809.)  But showing that the reports are reliable does not show that they are admissible.  *See* Fed. R. Evid. 802.

The Court determines that the Lexis reports are inadmissible hearsay. Accordingly, the Court **SUSTAINS** Defendant's objection and disregards this evidence.  *See Goodwin*, 2021 WL 848948, at *8 ("If, in evaluating an objection under Rule 56(c)(2), a court is presented with inadmissible evidence, it 'should disregard the evidence rather than striking it from the record.'").

## B.    The EEOC Determination

In support of his opposition to Defendant's motion for summary judgment, Plaintiff filed Mr. Rembert's EEOC charge, the EEOC determination, and the EEOC right-to-sue letter.  (ECF No. 61-1, PageID #2609–12.)  In its determination, the EEOC found there was reasonable cause to believe that Defendant discriminated against Plaintiff in violation of Title VII.  (*Id.*, PageID #2610.)  Defendant moves to strike the EEOC determination.  (ECF No. 68.)

Because the EEOC determination is offered for its truth, it is hearsay. Fed.R.Evid. 801(c). However, under Rule 803(8), reports of a "public office" setting forth "factual findings from a legally authorized investigation" are not excluded unless "the source of information or other circumstances indicate a lack of trustworthiness." Fed. R. Evid. 803(8)(A)(iii) & (B). In addition to factual findings, an agency's conclusions or opinions formed as the result of a factual investigation are admissible under this exception. *Alexander v. CareSource*, 576 F.3d 551, 562 (6th Cir. 2009).

Defendant argues that the EEOC determination is inadmissible hearsay because it is untrustworthy. (ECF No. 68, PageID #2743.) But Defendant has not shown why the EEOC determination in this case is any less trustworthy than other EEOC determinations, which courts consider at summary judgment and admit into evidence at trial. *See, e.g.*, *Watters v. Summit Cnty., Ohio*, No. 5:14CV2390, 2016 WL 3544752, at *3 (N.D. Ohio June 29, 2016) (summary judgment); *Blakely v. City of Clarksville*, No. 3:01-1186, 2006 WL 273550, at *2 (M.D. Tenn. Feb. 2, 2006), *aff'd in relevant part*, 244 F. App'x 681, 683 (6th Cir. 2007) (trial).

Further, Defendant argues that the EEOC determination should be excluded Under Rule 403 because it has low evidentiary value which is substantially outweighed by the danger of unfair prejudice. (ECF No. 68, PageID #2742.) Whether the Court should exclude the EEOC determination pursuant to Rule 403 is an inquiry for trial. At summary judgment, a party may only object to evidence that cannot be presented in a form that would be admissible. *See* Fed. R. Civ. P. 56(c)(2). As

19

presented, the EEOC determination is admissible, and the Court will consider it in connection with the motion for summary judgment.    Therefore, the Court **OVERRULES** Defendant's objection.

### C.    The Moran Affidavit

In support of its reply brief, Defendant attached the affidavit of Brian Moran. (ECF No. 69, PageID #2755; ECF No. 69-2, PageID #2778.)  This affidavit responds to Plaintiff's arguments opposing summary judgment comparing Mr. Rembert's treatment to that of others.  Defendant maintains that Plaintiff misrepresents the facts and that it supplies the affidavit to provide the complete factual record.  (ECF No. 74, PageID #2813.)  Plaintiff objects to the evidence because Defendant did not file its with its summary judgment motion.  (ECF No. 71, PageID #2787.)  Further, Plaintiff contends that Moran's affidavit contradicts the deposition testimony Moran gave as Defendant's corporate representative pursuant to Rule 30(b)(6).  (*Id.*, PageID #2784.)

Because this evidence responds to facts presented in Plaintiff's opposition, the reply was the first chance Defendant had to respond to those facts.  When it did so, Defendant limited the evidence to that necessary to provide an accurate record of the facts.  Such circumstances present an exception to the general rule against presenting evidence or argument for the first time in reply.  *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 476 (6th Cir. 2002).

Plaintiff also contends that the affidavit contradicts Moran's prior deposition testimony.  In determining the admissibility of an affidavit at summary judgment,

the district court must first consider "whether the [declaration] 'directly contradicts the nonmoving party's prior sworn testimony,'" and, "[i]f so, absent a persuasive justification for the contradiction, the court should not consider the [declaration]." *Reich v. City of Elizabethtown*, 945 F.3d 968, 976 (6th Cir. 2019) (quoting *Aerel, S.R.L. v. PCC Airfoils, LLC*, 448 F.3d 899, 905 (6th Cir. 2006)).  Sixth Circuit precedent suggests "a relatively narrow definition of contradiction."  *Briggs v. Potter*, 463 F.3d 507, 513 (6th Cir. 2006) (citing *Aerel, S.R.L.*, 448 F.3d at 907).  If a party "was not directly questioned about an issue," a later declaration on that issue simply "fills a gap left open by the moving party."  *Aerel, S.R.L.*, 448 F.3d at 907.  "After all, deponents have no obligation to volunteer information the questioner fails to seek." *Reich*, 945 F.3d at 976.

To consider contradiction, the Court compares Moran's deposition testimony with the statements in his affidavit.  On both occasions, Moran testified to the meaning of two columns labeled "Application Status" and "Application Disposition" contained in a new hire spreadsheet Defendant produced and filed under seal.  (ECF No. 50-7, PageID #1409; *see also* ECF No. 59-17, PageID #2396–97.)  In the deposition, Moran gave the following testimony in response to questions from Plaintiff's counsel:

> Q.  I am circling here, "applicant status" on Exhibit 17, what does that mean?
>
> A.  Applicant status is a code that was utilized in our system to move candidates through the process.
>
> Q.  Status of when, as of when?

21

> A.   After the candidate applies and the candidates are being reviewed by either an HR business partner or a recruiter.
>
> Q.   And then application, we can't read this, it says "disposition." What does that mean?
>
> A.   That would be the disposition code after the candidates are fully reviewed.
>
> Q.   So that is a final act, right, a final step?
>
> A.   That's correct, Dale.
>
> Q.   So it goes from application status first and then to application disposition?
>
> A.   That's correct.

(ECF No. 49-7, PageID #1205.)  In contrast, in his affidavit, Moran states that the "Application Status" column "was a mandatory data entry field that reflects the disposition of the application for employment of each candidate." (ECF No. 69-2, ¶ 7, PageID #2779.)  Further, Moran swore that the "Application Disposition" column was an "optional extra data entry field" that was "often but not always used . . . to assist with internal communications on the status of an applicant as they moved through the process." (*Id.*, ¶ 8, PageID #2779.)  The Court determines that Plaintiff directly questioned Moran on the meaning of the "Application Status" and "Application Disposition" columns during the deposition and that Moran's affidavit directly contradicts his prior sworn testimony.  Defendant offers no persuasive justification for contradicting this testimony.  Therefore, the Court disregards this information from Moran's affidavit.

But the record shows that Plaintiff did not question Moran during the deposition about other information Moran provides in the affidavit. Specifically, Moran states in the affidavit that, ultimately, the "Application Status" column "accurately states whether an employee was hired by Swagelok." (*Id.*, ¶ 9, PageID #2779.) Further, Moran states that the four individuals Plaintiff identified as comparator applicants in his opposition to Defendant's motion for summary judgment "were <u>not hired</u> by Swagelok as reflected in the ["Application Status"] column where it states 'Offer rescinded.'" (*Id.*) On these points, there is no contradiction. Moran's affidavit simply fills in a gap left open in Moran's testimony Plaintiff's counsel elicited and provides broader context that bears on proper interpretation of the record.

For these reasons, the Court **SUSTAINS IN PART** Plaintiff's objection. Specifically, the Court **SUSTAINS** Plaintiff's objection to the extent Moran's affidavit contradicts his prior sworn testimony. The Court **OVERRULES** Plaintiff's objection to the extent Moran's affidavit fills in gaps relating to the final hiring status of the comparator applicants, about which Plaintiff did not question Moran during the deposition. Further, because Plaintiff had an opportunity at oral argument to speak to Defendant's position, a surreply is not necessary, and the Court **DENIES** Plaintiff's request to file one.

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). On a motion for summary judgment, the Court must view

evidence in the light most favorable to the non-moving party. *Kirilenko-Ison v. Board of Educ. of Danville Indep. Schs.*, 974 F.3d 652, 660 (6th Cir. 2020) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On a motion for summary judgment, the moving party has the initial burden of establishing that there are no genuine issues of material fact as to an essential element of the claim or defense at issue. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 & n.12 (6th Cir. 1989); *Chappell v. City of Cleveland*, 584 F. Supp. 2d 974, 988 (N.D. Ohio 2008). After discovery, summary judgment is appropriate if the nonmoving party fails to establish "an element essential to that party's case and upon which that party will bear the burden of proof at trial." *Tokmenko v. MetroHealth Sys.*, 488 F. Supp. 3d 571, 576 (N.D. Ohio 2020) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"The party seeking summary judgment has the initial burden of informing the court of the basis for its motion" and identifying the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Id*. (citing *Celotex Corp.*, 477 U.S. at 322). Then, the nonmoving party must "set forth specific facts showing there is a genuine issue for trial." *Id*. (citing *Anderson*, 477 U.S. at 250). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.

If a genuine dispute exists, meaning "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is not

appropriate. *Id*. However, if "the evidence is merely colorable or is not significantly probative," summary judgment for the movant is proper. *Id*. The "mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247–48). To determine whether a genuine dispute about material facts exists, it is not the Court's duty to search the record; instead, the parties must bring those facts to the Court's attention. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1087 (6th Cir. 1996). Ultimately, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251.

## ANALYSIS

Defendant moves for summary judgment on all of Plaintiff's claims. (ECF No. 51.) Plaintiff brings three categories of claims: (1) race discrimination, (2) retaliation, and (3) hostile work environment. For each category, Plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, Chapter 4112 of the Ohio Revised Code, and Section 1981 of the Civil Rights Act of 1866. (ECF No.1, PageID #12–21.) "Ohio courts apply federal case law interpreting Title VII of the Civil Rights Act of 1964 to claims arising under R.C. Chapter 4112 to the extent that the terms of the statutes are consistent." *Flagg v. Staples the Office Superstore E., Inc*., 138 F. Supp. 3d 908, 915 (N.D. Ohio 2015) (quoting *Birch v. Cuyahoga Cnty. Prob. Ct*., 173 Ohio App. 3d 696, 2007-Ohio-6189, 880 N.E.2d 132, ¶ 20 (8th Dist.)). The same analysis applies to claims under Section 1981. *Amini v. Oberlin College,* 440 F.3d

350, 358 (6th Cir. 2006).  Because of the overlap between federal and State law, for each category of claims, the Court analyzes the Title VII, Chapter 4112, and Section 1981 claims together.

## I.     Race Discrimination and Retaliation Claims

Title VII prohibits employers from taking adverse employment actions because of race.  42 U.S.C. § 2000e–2(a).  Additionally, Title VII prohibits retaliation against employees who have opposed discriminatory employment practices.  *Id.* § 2000e–3(a).  This statute requires proof according to traditional principles of but-for causation.  *University of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  Under this standard, the law does not regard an act as a cause of an event if the particular event would have occurred without the act.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176–77 (2009) (citations omitted).  Because events may have multiple but-for causes, a Title VII defendant cannot avoid liability by citing a permissible factor that contributed to the challenged employment decision.  *Burrage v. United States*, 571 U.S. 204, 211–12 (2014); *Nassar*, 570 U.S. at 350.  Liability depends on whether an employee's protected trait "actually motivated the employer's decision" and "had a determinative influence on the outcome."  *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993).

To demonstrate impermissible race discrimination or retaliation, a plaintiff may put forward direct evidence or rely instead on inferential or circumstantial evidence.  In this case, Plaintiff takes the latter approach.  Where a claim builds on circumstantial evidence, courts use the familiar three-step *McDonnell Douglas*

burden-shifting framework to determine the propriety of summary judgment.  *See George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020).  First, the plaintiff must establish a prima facie case of discrimination.  Second, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action.  Third, the plaintiff must demonstrate the stated justification is merely a pretext for unlawful discrimination.

### I.A.    Prima Facie Cases

#### I.A.1. Race Discrimination Prima Facie Case

To establish a prima facie case of discrimination, a plaintiff must show by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) he was treated differently than similarly situated employees from a nonprotected class.  *McDonnell Douglas*, 411 U.S. at 802; *Talley v. Bravo Pitinio Restaurant*, 61 F.3d 1241, 1246 (6th Cir. 1995).  Here, Defendant does not contest that Plaintiff belongs to a protected class or that he was subjected to adverse employment actions.  Accordingly, whether Plaintiff has established a prima facie case of discrimination turns on the third and fourth elements.

#### I.A.1.a. Plaintiff's Qualification for the Job

At the prima facie stage, courts focus on the plaintiff's objective qualifications for the relevant job.  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003).  "The prima facie burden of showing that a plaintiff is qualified can therefore be met by presenting credible evidence that his or her qualifications are at

least equivalent to the minimum objective criteria required for employment in the relevant field." *Id*. at 575–76. The inquiry turns on such criteria as "the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id*. at 576. A court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case. *Id*. at 574 (citing *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660–61 (6th Cir. 2000)).

In this case, Defendant contends that it rescinded Plaintiff's employment offer and terminated his temporary assignment because of Plaintiff's domestic violence conviction. (ECF No. 51, PageID #1419–20.) As relevant here, Defendant also contends that Plaintiff's domestic violence conviction rendered him unqualified for the position. (*Id*., PageID #1424.) Defendant argues that its "minimum objective criteria" require potential employees to pass a background check and drug test. (*Id*.) However, as Defendant acknowledges, it evaluates each background report on a "case by case basis." (*Id*.) In contrast, in the cases Defendant cites in support of its position, a potential employee's conviction automatically disqualified the individual from employment. *See Strong v. Orkand Corp.*, 83 F. App'x 751, 753 (6th Cir. 2003) (obtaining a favorable security clearance was a requirement of employment); *Crowder v. Railcrew Xpress*, 557 F. App'x 487, 489 (6th Cir. 2014) (convicted felons prohibited from holding the position). Because Defendant individually reviews every background report and makes discretionary employment decisions based on its

review, the Court cannot say that Plaintiff's conviction renders him unqualified as a matter of law.

Moreover, at this stage of the analysis, the Court disregards the employer's nondiscriminatory reason. *Wexler*, 317 F.3d at 575 (citing *Cline*, 206 F.3d at 660–61). Defendant does not dispute Plaintiff's qualification for the job for any reason other than his domestic violence conviction. Based on Plaintiff's experience working for Defendant as a temporary employee and testimony from Plaintiff's supervisors, Plaintiff meets his burden of establishing that he was qualified for both the temporary and permanent positions. (*See* ECF No. 49-5, PageID #966; ECF No. 49-6, PageID #1021.)

### I.A.1.b. Similarly Situated Individuals

A plaintiff may satisfy the fourth element of the *McDonnell Douglas* test by showing that he was replaced by a person from a nonprotected class or that similarly situated nonprotected employees were treated more favorably. *Haji v. Columbus City Sch.*, 621 F. App'x 309, 315 (6th Cir. 2015). Here, Defendant did not hire another person for the position after rescinding Plaintiff's offer. (ECF No. 49-3, PageID #798–99; ECF No. 49-5, PageID #978.) Therefore, Plaintiff must show that similarly situated employees received more favorable treatment. To establish that an employee is similarly situated, Plaintiff must show that the employee is similar to him in "all relevant respects" but "need not demonstrate an exact correlation." *McKinnon v. L-3 Commc'ns Corp.*, 814 F. App'x 35, 48 (6th Cir. 2020) (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998)).

### I.A.1.b.i.    Swagelok Employees

Plaintiff identifies three employees who were convicted of crimes of violence during their employment at Swagelok—J.O., J.M. and A.P.  (ECF No. 64, PageID #2664–65.)  Plaintiff argues Defendant failed to terminate their employment.  However, Defendant does not have a practice of running background checks on current employees.  (ECF No. 49-2, PageID #719.)  Therefore, employees who are convicted of crimes of violence during their employment with Swagelok are not similarly situated to Plaintiff, who was convicted prior to his application for permanent employment.

Plaintiff argues that Defendant allowed at least two of these employees to continue working for several months after Defendant learned of their convictions.  (ECF No. 64, PageID #2665–66; ECF No. 65, PageID #2708.)  Defendant maintains that these employees are not proper comparators because they were convicted of crimes during their employment.  (ECF No. 69, PageID #2757.)  Defendant conducts background checks only on applicants for employment, not on current employees.  (ECF No. 49-2, PageID #718–19.)  Further, Defendant argues that they were not treated more favorably than Plaintiff in any event because Defendant terminated their employment when it learned of and confirmed their convictions through this litigation.  (ECF No. 69, PageID #2757.)  The Court agrees that these employees are not proper comparators because they did not have convictions for crimes of violence at the time of their applications for employment.  Further, when Swagelok learned of the convictions, the record shows it terminated these employees.

30

## I.A.1.b.ii.    Swagelok Applicants

Plaintiff identifies as comparators eight other applicants who he claims Defendant hired despite their criminal convictions. Regarding Defendant's investigation of an applicant's criminal history, Defendant only considers the HireRight background report containing criminal convictions. (ECF No. 49-2, PageID #717.) Therefore, the following alleged comparators' criminal convictions constitute their only relevant criminal histories:

| Applicant No. | Conviction | Degree | Date of Disposition | Date of Application | Record Citation |
|---|---|---|---|---|---|
| 1 (J.B.) | Menacing | Fourth-degree misdemeanor | 12/5/2013 | 2/28/2017 | ECF No. 59-2, PageID #2203, #2205–06 |
| 2 (C.B.) | Obstructing justice & attempt to commit an offense | First-degree misdemeanors | 6/18/2015 | 12/13/2017 | ECF No. 59-4, PageID #2223–24; ECF No. 59-38, PageID #2499 |
| 3 (A.S.) | Disorderly conduct—intoxicated public place persisting | Fourth-degree misdemeanor | 2/16/2016 | 10/27/2016 | ECF No. 59-5, PageID #2236–37 |
| 4 (M.B.) | Unlawful sexual conduct with a minor | First-degree misdemeanor | 12/24/2012 | 11/30/2016 | ECF No. 59-6, PageID #2246, 2261–62 |
| 5 (S.N.) | Assault & disorderly conduct | First-degree misdemeanor & fourth-degree misdemeanor | 10/2/2007 & 6/13/2012 | Unknown | ECF No. 59-11, PageID #2316, #2321–22 |
| 6 (W.B.) | Disorderly conduct | Fourth-degree misdemeanor | 4/11/2006 | Unknown | ECF No. 59-12, PageID #2331–32 |
| 7 (A.S.) | Unauthorized use of property & disorderly conduct | Fourth-degree misdemeanor & minor misdemeanor | 6/15/2006 | Unknown | ECF No. 59-13, PageID #2337–38 |
| 8 (E.P.) | Domestic violence | First-degree misdemeanor | 9/15/2009 | 6/23/2017 | ECF No. 59-14, PageID #2347, #2349–50; ECF No. 59-40, PageID #2527 |

Defendant argues that these applicants are not similarly situated to Plaintiff because of the timing between their convictions and their employment applications. (ECF No. 69, PageID #2753.)  For four of the alleged comparators convicted of what appear to be crimes of violence (Applicant Nos. 1, 2, 4, and 8), the convictions occurred more than two years before they applied for employment.  The time periods between those applicants' convictions and employment applications appear to differ materially from the facts here involving Mr. Rembert.  But Defendant applies its policy on a case-by-case basis, creating questions of fact whether it did so here in good faith, pretextually, or the like.

One comparator (Applicant No. 3) was convicted eight months before he applied for employment for disorderly conduct arising from public intoxication. Another (Applicant No. 5) was convicted of disorderly conduct in 2012, though the record does not indicate when this employee applied for a position with Swagelok. That leaves two alleged comparators (Applicant Nos. 6 and 7).  For them, the record does not reveal the date on which each applied for employment, and each has disorderly conduct convictions, among others.  A reasonable finder of fact could determine that these applicants are similarly situated in "all relevant respects." Therefore, Plaintiff has come forward with a sufficient record in support of his prima facie case with respect to these eight applicants.

Plaintiff identifies five additional applicants as comparators—S.R., M.G., T.M., K.K., and S.N.  (ECF No. 64, PageID #2663–64.)  As to the first of these additional applicants, S.R., Plaintiff does not contend that Defendant hired him. (ECF No. 64,

PageID #2663; ECF No. 65, PageID #2705.)  Therefore, Plaintiff has not shown that this applicant was treated more favorably.

As to the other four additional applicants, Defendant maintains that it did not hire them. (ECF No. 69, PageID #2754–55; ECF No. 69-1.)  Plaintiff disagrees.  As evidence, Plaintiff relies exclusively on an internal human resources new hire spreadsheet Defendant produced.  That spreadsheet contains two columns, respectively titled "Application Disposition" and "Application Status."  In the "Application Status" column, the spreadsheet displays "Offer–Rescinded" for Mr. Rembert and the alleged comparator applicants.  (ECF No. 59-17, PageID #2393 & #2396.)  In the "Application Disposition" column, the spreadsheet displays "Offer rescinded" for Mr. Rembert, but reads "Hired" for the comparator applicants.  (ECF No. 59-17, PageID #2393 & #2397.)  Based solely on this evidence, Plaintiff contends that the alleged comparator applicants were hired or, at least, that there is a dispute of fact on the question.  (ECF No. 64, PageID #2663; ECF No. 65, PageID #2705.)

To refute these arguments, Defendant submitted the Moran affidavit.  This dispute provides broader context for that evidentiary fight.  Striking the Moran affidavit in its entirety would have the effect of depriving the Court and the parties of a complete record on the issue.  At bottom, that motion seeks to keep historical facts from the jury, and Plaintiff relies on mischaracterizations of the facts to oppose Defendant's arguments.  That is a bridge too far.  And the record is so one-sided on the issue—considering only those aspects of the Moran affidavit that do not contradict his deposition testimony—that a reasonable finder of fact could only determine that

the additional applicants were not hired as the record establishes.  Accordingly, Plaintiff has not shown that they were treated more favorably than him.

### I.A.2. Retaliation Prima Facie Case

Plaintiff also brings a claim for retaliation.  (ECF No. 1, PageID #15–19.) Under this theory, Plaintiff alleges Defendant took adverse employment actions against him because he opposed race discrimination, a protected activity under Title VII.  (*Id.*, ¶¶ 98–101, PageID #15–16.)  To demonstrate a prima facie case of retaliation, a plaintiff must show that "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was 'materially adverse' to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *George*, 966 F.3d at 459.  Defendant does not dispute that it subjected Plaintiff to adverse employment actions when it rescinded his offer of employment and terminated his temporary assignment, satisfying the third element.

### I.A.2.a. Protected Activity

Complaining about racial discrimination is a protected activity under Title VII. *Niswander v. Cincinnati Ins. Co.*, 529 F.3d 714, 721 (6th Cir. 2008).  Plaintiff testified that he repeatedly complained to his supervisor about racial harassment.  (ECF No. 49-1, PageID #620–21.)   In the supervisor's testimony, Kaiser denied that Plaintiff ever complained about racial harassment to him.  (ECF No. 49-6, PageID #1032–33.)  On summary judgment, however, the Court must construe the record in favor of the non-moving party.  On this issue that turns on the credibility of the

34

witnesses, a reasonable jury could credit Mr. Rembert's testimony and discount Kaiser's. Therefore, Plaintiff comes forward with sufficient evidence to show that there is a genuine dispute of material fact as to this element.

### I.A.2.b. Defendant's Knowledge

An essential element of the prima facie case of retaliation is that the decisionmaker behind the adverse employment action knew of the plaintiff's protected activity. *Proffitt v. Metropolitan Gov't of Nashville & Davidson Cnty., Tenn.*, 150 F. App'x 439, 442 (6th Cir. 2005). This element cannot be met merely by showing that the defendant had "general corporate knowledge" of the protected activity; rather, the plaintiff must present evidence that the decisionmaker had actual knowledge of the protected activity. *Evans v. Professional Transp., Inc.*, 614 F. App'x 297, 300–01 (6th Cir. 2015). Circumstantial evidence can support a reasonable inference of the decisionmaker's knowledge if the evidence is comprised of "specific facts" and not merely "conspiratorial theories," "flights of fancy, speculations, hunches, intuitions, or rumors." *Mulhall v. Ashcroft*, 287 F.3d 543, 552 (6th Cir. 2002).

Plaintiff testified that he complained about racial harassment only to his supervisor, Kaiser, and two coworkers, Ahmed Campbell and Bill Lewis. (ECF No. 49-1, PageID #623 & #640.) While those individuals had direct knowledge of Plaintiff's engagement in a protected activity, none was the decisionmaker behind the adverse employment action. Further, Kaiser testified that he did not make any report of Plaintiff's complaints of racial harassment to human resources or others at

35

Swagelok.  (ECF No. 49-6, PageID #1030.)  Plaintiff presents no evidence that his two coworkers did so either.

Defendant contends that human resources director John Kocsis made the final decision to rescind Plaintiff's employment offer.  (ECF No. 51, PageID #1426–27.) Kocsis attests that his job duties included reviewing candidates' background checks that were flagged and determining whether the results of the background check disqualified a candidate from employment.  (ECF No. 51-13, ¶¶ 2–3, PageID #1657.) Further, he made the final decision to rescind Plaintiff's offer of employment based on Plaintiff's recent domestic violence conviction.  (*Id.*, ¶ 5, PageID #1657.)  Kocsis denied knowing that Plaintiff complained of or experienced any harassment.  (*Id.*, ¶ 8, PageID #1657.)

Plaintiff responds that Kocsis's knowledge of Plaintiff's protected activity can be inferred.  (ECF No. 64, PageID #2670; ECF No. 65, PageID #2712.)  But Plaintiff presents no evidence to support such an inference.  *See Mulhall*, 287 F.3d at 551 (a plaintiff must present direct or circumstantial evidence from which a reasonable jury could infer that the decisionmaker knew or was aware of his protected activity). Though Plaintiff points out that Kocsis interacted with Kaiser, such interaction alone does not support an inference of knowledge on Kocsis's part.  *Cf. Hicks v. SSP Am., Inc.*, 490 F. App'x 781, 785 (6th Cir. 2012) (the decisionmaker was friends with and the direct supervisor of the subordinate employee with knowledge).  In a footnote, Plaintiff lists evidence that he argues shows that Kaiser acted as a biased "cat's paw" by influencing Kocsis.  (ECF No. 64 PageID #2670 & n.7; ECF No. 65, PageID #2712

36

& n.7.)  But this evidence does not change the absence of a factual basis to support the claim that Kaiser told Kocsis about Mr. Rembert's complaints of discrimination. Nor does Plaintiff cite supporting case law explaining how the listed evidence supports his prima facie case.  *See Bose v. Bea*, 947 F.3d 983, 988 (6th Cir. 2020) (explaining that the "cat's paw" theory of causation requires the court to impute one actor's retaliatory or discriminatory motive to the adverse action of another).

Further, Plaintiff argues that Kocsis was not the decisionmaker or that he was not the only decisionmaker.  (ECF No. 64, PageID #2672; ECF No. 65, PageID #2714.) Plaintiff maintains that Defendant's legal counsel was involved in the decision to rescind Plaintiff's employment offer.  (ECF No. 64, PageID #2656–59; ECF No. 65, PageID #2698–2701.)  But Plaintiff makes no argument and presents no evidence, direct or circumstantial, that Defendant's legal counsel knew of Plaintiff's complaints of racial harassment.  Accordingly, based on the evidence presented, there is a legal gap in Plaintiff's gap, and no reasonable jury could find that the decisionmaker behind the adverse employment actions had knowledge of Plaintiff's protected activity.

### I.A.2.c. Causation

To prove causation in a Title VII retaliation case, a plaintiff must show that the employee's protected activity was a "but for" cause of the employer's adverse action against him, meaning the adverse action would not have occurred absent the employer's desire to retaliate.  *Nassar*, 570 U.S. at 352.  Because Plaintiff has not shown that the decisionmaker behind the adverse employment actions had

37

knowledge of his protected activity, he cannot show that the protected activity caused the adverse employment actions of which he complains.

*       *       *

For these reasons, Plaintiff has not made a sufficient showing of a prima facie case of retaliation.

### I.B.    Legitimate Reason

Because Plaintiff establishes a prima facie case for race discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment decision.  *McDonnell Douglas*, 411 U.S. at 802–03.  Defendant contends that it rescinded Plaintiff's offer of employment and terminating his temporary assignment because of Plaintiff's recent domestic violence conviction revealed on his background report.  (ECF No. 51, PageID #1429.)  Defendant had a practice to rescind offers of employment to candidates whose background reports reveal recent crimes of violence.  (ECF No. 49-7, PageID #1111.)  Plaintiff does not argue that this reason is not a legitimate reason of that this reason is discriminatory. Therefore, Defendant has articulated a legitimate nondiscriminatory reason for its employment actions.

### I.C.    Pretext

Where the employer provides a legitimate nondiscriminatory reason for the adverse employment action, the plaintiff must then produce sufficient evidence from which a jury could reasonably reject the employer's explanation.  *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (citations omitted).  A plaintiff can show pretext

38

in three interrelated ways, by demonstrating that an employer's proffered reason: (1) has no basis in fact; (2) did not actually motivate the employer's actions; or (3) was insufficient to motivate the employer's actions.  *Miles v. South Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 888 (6th Cir. 2020).

Under the first of these ways of showing pretext—that the employment decision has no basis in fact—Plaintiff contends that Defendant's basis was "factually false" because Plaintiff passed his background check when Defendant initially approved his application.  (ECF No. 64, PageID #2671; ECF No. 65, PageID #2713.) But Defendant's proffered reason for the adverse employment actions is Plaintiff's recent domestic violence conviction.  Plaintiff does not dispute the truth of his conviction.  The record shows, beyond dispute, an internal miscommunication or mistake that explains Swagelok's initial approval of Mr. Rembert's application.

Under the third way of showing pretext—that the proffered reason was insufficient to motivate the employer's actions—Plaintiff argues that Mr. Rembert was not a danger to other workers.  (ECF No. 64, PageID #2671; ECF No. 65, PageID #2713.)  However, Defendant rescinded Plaintiff's employment offer pursuant to its practice of rescinding offers when a candidate's background check revealed a recent crime of violence.  Though Plaintiff argues that such a practice is ineffective at protecting workers, the relevant inquiry is whether the employer took the adverse action for a legitimate reason, not whether the employer's practices are effective.  (*Id.*)

Plaintiff also points to "shifting decisionmakers" but fails to explain how Defendant's representations about the decisionmaker in this case evidence pretext.

39

(ECF No. 64, PageID # 2672; ECF No. 65, PageID #2714.)  Also, Plaintiff asserts that "a discriminatory atmosphere" shows pretext but does not explain further.  (*Id.*)  Nor do Defendant's other purported failures to follow its policies reflect on whether Defendant's reason was pretextual.  (ECF No. 64, PageID # 2672–73; ECF No. 65, PageID #2714–15.)  As to Plaintiff's contention of "shifting justifications" for the adverse employment actions, the evidence to which Plaintiff points merely shows different ways of describing the same justification—Plaintiff's recent domestic violence conviction.  (ECF No. 64, PageID #2673–74; ECF No. 65, PageID #2715–16.)  Finally, Plaintiff's cited statistics do not show pretext in this matter.  (ECF No. 64, PageID #2674; ECF No. 65, PageID #2716.)  "Incomplete or inapplicable analyses, simplistic percentage comparisons, and small sample sizes produce statistical analyses with little probative value." *Shollenbarger v. Planes Moving & Storage*, 297 F. App'x 483, 485 (6th Cir. 2008).

Finally, Plaintiff's identification of similarly situated employees who were treated more favorably arguably creates a question of fact for a jury.  (ECF No. 65, PageID #2714.)  Ordinarily, a finder of fact might well be entitled to assess Defendant's credibility on that issue and decide for itself whether to credit it. However, on the record presented, even construed in favor of Plaintiff, there is no evidence that the decisionmaker at Swagelok, Kocsis, knew the race of any person subject to the policy.  Indeed, the record establishes that he did not even know the race of Mr. Rembert.  (ECF No. 49-4, PageID #875–76 & 878.)  Though Plaintiff

maintains that Defendant's general counsel, not Kocsis, might have been the decisionmaker, Plaintiff presents no evidence in support of this theory.

In his opposition to Defendant's motion, Plaintiff relies on *Barrow v. Terminix International Company,* No. 3:07-CV-324, 2009 WL 243093 (S.D. Ohio Jan. 29, 2009). ([ECF No. 64](#), PageID #2674–75; [ECF No. 65](#), PageID #2716–17.)  There, the court denied the defendant's motion for summary judgment on the plaintiff's race discrimination claim.  *Barrow*, 2009 WL 243093, at *12.  The court determined that there was conflicting evidence about why the defendant did not hire the plaintiff, whether the plaintiff passed his background check, and who the decisionmaker was and whether that person knew the plaintiff's race.  *Id.*  Though Plaintiff makes similar arguments in this case, the record here leaves no doubt that Mr. Rembert did not pass the background check and that Defendant acted on the basis of its policy requiring an applicant to pass a background check.  Nor would the record support a finding that Kocsis knew Mr. Rembert's race.  Further, Plaintiff's comparison to *Barrow* is misplaced because of the fact-intensive nature of the inquiry.

Accordingly, the Court determines that Plaintiff has not established a genuine dispute of material fact as to whether Defendant's reason for the adverse employment actions was pretextual.

*    *    *

For the above reasons, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's race discrimination and retaliation claims.

## II.    Hostile Work Environment

Plaintiff also asserts hostile work environment claims.  Title VII protects employees against having to work in a "discriminatorily hostile or abusive environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  A hostile work environment occurs only where the workplace is said to be "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Williams v. General Motors Corp.*, 187 F.3d 553, 560 (6th Cir.1999).  Conduct in the workplace, even if properly characterized as "deplorable, off-color, or offensive to our most basic value of according respect and dignity to every person," does not always present a legally actionable hostile work environment. *Kelly v. Senior Ctrs., Inc.*, 169 F. App'x. 423, 429 (6th Cir. 2009).

"To succeed on a claim of racially hostile work environment," Plaintiff must show that (1) he "belonged to a protected group"; (2) he "was subject to unwelcome harassment"; (3) "the harassment was based on race"; (4) the harassment was "sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment"; and (5) Defendant "knew or should have known about the harassment and failed to act." *Williams v. CSX Trans. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).  The parties do not dispute that Plaintiff is a member of a protected group.

42

## II.A.  Unwelcome Harassment

Construing the record in favor of Plaintiff, the harassment of which he complains was unwelcome.  Further, in its motion for summary judgment, Defendant does not contest this element of a hostile work environment claim.

## II.B.  Conduct Based on Race

This element of the prima facie case limits the Court's review to harassment based on Plaintiff's race.  *Bradley v. Arwood*, 705 F. App'x 411, 417 (6th Cir. 2017).  Plaintiff may prove harassment based on race by either (1) direct evidence of the use of race-specific and derogatory terms, or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed-race workplace.  *CSX Transp. Co.*, 643 F.3d at 511.  Though harassing conduct need not be overtly racist, Plaintiff must demonstrate he would not have been harassed but for his race.  *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 706 (6th Cir. 2007).

As to direct evidence of racial harassment, Defendant concedes that the following instances of harassment to which Plaintiff testified are related to race: repeated use of the N-word by supervisors and a coworker (ECF No. 49-1, PageID #614, #615 & #622); a supervisor's references to "Black face" directed at Plaintiff (*id.*, PageID #618); and a coworker holding up a hose pipe like a noose and saying, "This is what we do here" (*id.*, PageID #614 & #622).  (ECF No. 51, PageID #1433.)  Defendant contends that no other alleged instance of harassment was related to Plaintiff's race.  (*Id.*)  Plaintiff maintains that there was additional harassment but does not point to specific instances or argue that those instances would not have

occurred but for Plaintiff's race. (ECF No. 64, PageID #2660; ECF No. 65, PageID #2702.) These instances support Plaintiff's prima facie case.

As to indirect evidence that workers in a nonprotected class were treated better, Plaintiff testified that a supervisor excluded him from a "shop talk" even though he allowed three to five Caucasian temporary workers to attend. (ECF No. 49-1, PageID #614 & #619.) However, Plaintiff also testified that he did not know if other Black temporary workers attended. (*Id.*, PageID #619.) Plaintiff's supervisor, Kaiser, testified that temporary employees could attend some shop talks but not others where confidential information was discussed. (ECF No. 49-6, PageID #1046.) On some occasions, Plaintiff did attend the shop talks with Kaiser. (ECF No. 49-1, PageID #619.) Though the Court draws all inferences in Plaintiff's favor, Plaintiff's observations are not sufficient to support his claim that the exclusion from the shop talk was based on race.

## II.C. Severe or Pervasive

Next, the Court examines whether the totality of the alleged racial harassment was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. *CSX Transp. Co.*, 643 F.3d at 512. Defendant focuses its argument on this aspect of the analysis. Factors that may be considered in making this determination include: the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with work performance. *Hafford v. Seidner*, 183 F.3d 506, 512 (6th Cir. 1999). In proving

hostility, the plaintiff must meet an objective and subjective standard. *Bradley*, 705 F. App'x at 421.

To prove a hostile work environment, Plaintiff points to the "death threats alone, including the noose" as sufficient. (ECF No. 64, PageID #2660; ECF No. 65, PageID #2702.)  Plaintiff does not identify any "death threats" other than the incident where a coworker held up a hose pipe like a noose.  On its own, this single occurrence is not sufficiently severe or pervasive to support Plaintiff's hostile work environment claim. *See Reed v. Procter & Gamble Mfg. Co.*, 556 F. App'x 421, 433 (6th Cir. 2014) (isolated instance of holding up a telephone cord like a noose was not sufficiently severe or pervasive).  Nor is it sufficient even when combined with the frequent use of the N-word and references to "Black face."  These comments, which may have been "offensive utterances," do not rise to the level of "physical threatening or humiliating." *See Harris*, 510 U.S. at 23.  Further, though Plaintiff testified that the incidents caused him hurt and stress (ECF No. 49-1, PageID #616, #621, #623 & #639), there is no evidence that the harassment unreasonably interfered with Plaintiff's work performance.  To the contrary, the record shows he performed well and secured an offer of permanent employment.

Finally, the Court considers the EEOC determination that Plaintiff filed with his complaint and in support of his opposition to Defendant's motion for summary judgment. (ECF No. 1-2; ECF No. 60-1, PageID #2610–11.)  After an investigation, the EEOC found that Defendant discriminated against Plaintiff "and a class of Black individuals because of their race, Black, in that they were subjected to a racially

offensive work environment and harassment, including, but not limited to, inappropriate and offensive race-based comments, pictures, graffiti, remarks and/or jokes because of their race." (ECF No. 60-1, PageID #2610.) While the EEOC found that Mr. Rembert and others were subjected to a racially offensive work environment and harassment, that finding does not equate to the higher legal standard Plaintiff must meet to establish a hostile work environment. The EEOC's determination provides no additional facts, particular to Mr. Rembert, that would support Plaintiff's hostile work environment claim or raise his work environment from merely offensive to hostile or harassing. Even with the EEOC's determination the record does not provide sufficient, specific evidence from which a jury could reasonably conclude that Plaintiff was subjected to a pervasive hostile work environment based on his race. Consequently, the Court **GRANTS** summary judgment in favor of Defendant on Plaintiff's hostile work environment claims.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion for partial judgment on the pleadings. (ECF No. 48.) The Court **SUSTAINS** Defendant's objection to the Lexis Reports (ECF No. 67) and **SUSTAINS IN PART** Plaintiff's objection to Moran's affidavit (ECF No. 71). The Court **OVERRULES** Defendant's objection to the EEOC determination. (ECF No. 68.) Further, the Court **GRANTS** Defendant's motion for summary judgment on all claims. (ECF No. 51.)

**SO ORDERED.**

Dated:  May 27, 2022

_____

            J. Philip Calabrese
            United States District Judge
            Northern District of Ohio